J-S27024-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAMIE M. BROWN | : | |
| | : | |
| Appellant | : | No. 1468 WDA 2018 |

Appeal from the PCRA Order Entered September 21, 2018
In the Court of Common Pleas of Beaver County
Criminal Division at No(s): CP-04-CR-0000913-2001

BEFORE:   OLSON, J., OTT, J., and COLINS*, J.

MEMORANDUM BY OTT, J.:                    FILED OCTOBER 02, 2019

Jamie M. Brown appeals from the order entered September 21, 2018, in the Beaver County Court of Common Pleas, dismissing, after a hearing, his serial petition for collateral relief filed pursuant to the Post Conviction Relief Act ("PCRA").[1]  Brown seeks relief from the judgment of sentence of 20 to 40 years' imprisonment, imposed on May 29, 2002, following his jury conviction of murder.  On appeal, he asserts the PCRA court erred in dismissing the petition.  For the reasons discussed below, we affirm.

_____

* Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S.A. §§ 9541-9546.

We take the underlying facts and procedural history in this matter from a prior panel's March 24, 2016 opinion and the PCRA court's September 21, 2018 opinion following remand.

This Court previously set forth the factual basis of this case as follows:

> [On March 15, 2001] Aliquippa Police Officer James Naim was on routine foot patrol in the Linmar Housing Plan when [Brown] approached him from the rear firing a nine millimeter handgun. Two bullets struck the officer in the head causing his immediate death. Testimony established that [Brown], who was well known to the law enforcement community, told several people that he was going to kill a police officer to "set an example."

Commonwealth v. Brown, 83 A.3d 1063 (Pa.Super.2013) (unpublished memorandum), at 1–2 (internal alterations and citation omitted).

The procedural history of this case is as follows. On May 10, 2002, [Brown] was convicted of third-degree murder. On May 29, 2002, [Brown] was sentenced to 20 to 40 years' imprisonment. This Court affirmed the judgment of sentence, and our Supreme Court denied allowance of appeal. Commonwealth v. Brown, 850 A.2d 5 (Pa.Super.2004) (unpublished memorandum), appeal denied, 581 Pa. 670, 863 A.2d 1142 (2004).

On June 30, 2005, [Brown] filed a pro se PCRA petition. Counsel was appointed and, on February 13, 2008, the PCRA court denied [Brown's] first PCRA petition. This Court affirmed the denial of PCRA relief, and our Supreme Court denied allowance of appeal. Commonwealth v. Brown, 965 A.2d 289 (Pa.Super.2008) (unpublished memorandum), appeal denied, 603 Pa. 689, 983 A.2d 725 (2009).

[Brown] thereafter sought federal habeas relief. Such relief was denied. Brown v. Mazurkiewicz, 2012 WL 954628 (W.D.Pa. Mar. 20, 2012). On July 12, 2012, [Brown] filed a pro se PCRA petition, his second. That petition was denied and this Court

affirmed. Commonwealth v. Brown, 83 A.3d 1063 (Pa.Super.2013) (unpublished memorandum).

On June 7, 2013, [Brown] filed his third pro se PCRA petition. Thereafter, [Brown] filed an amended petition along with a motion to disqualify the Office of Attorney General ("OAG") and a motion seeking the PCRA court's recusal. On July 15, 2014, the PCRA court denied the motion to disqualify and the motion for recusal. On August 12, 2014, the PCRA court issued an amended notice of its intent to dismiss the petition without an evidentiary hearing. See Pa.R.Crim.P. 907. On December 22, 2014, the PCRA court dismissed the petition. This timely appeal followed.

Commonwealth v. Brown, 141 A.3d 491, 495-496 (Pa. Super. 2016) (footnotes omitted).

On March 24, 2016, this Court affirmed in part, vacated in part, and remanded. See id. at 495. While agreeing that Brown's petition was "patently untimely[,]" we found that "there [was] a genuine issue of material fact as to whether [Brown] pled and proved the applicability of the PCRA's newly-discovered fact exception." Id. at 507-508. This genuine issue of material fact concerned an affidavit filed by Angela White. Immediately following Officer Naim's murder, White was the subject of a drug investigation. In 2013, she provided an affidavit to Brown in which she stated that, as part of that investigation, there were wiretaps and, on one of them, an unknown individual confessed to killing Officer Naim. Id. at 502. We, therefore, remanded the matter for consideration solely of whether "Brown acted with due diligence in discovering [that there were wiretap tapes and transcripts in an unrelated matter that concerned his case]" and whether the wiretaps constituted admissible evidence. Id. at 507.

- 3 -

The PCRA court described the background of the wiretaps, their contents, the events following remand, and its findings of fact as follows:

On March 17, 2001, [Brown] was arrested and charged with [c]riminal [h]omicide relating to the death of Officer James Naim of the Aliquippa Police Department. Both the City of Aliquippa Police Department and the Beaver County District Attorney's Office requested that the offense be investigated by the Pennsylvania State Police and prosecuted by the Pennsylvania Office of the Attorney General. During the investigation, the Attorney General's Office did file [a]pplications with the Pennsylvania Superior Court seeking authorization to intercept electronic and wire communications of various individuals known to have associations with [Brown]. The Honorable Justin M. Johnson of the Superior Court of Pennsylvania approved three (3) separate [a]pplications for interceptions at Docket Numbers 12-1 W.D. 2001 on March 19, 2001; 12-2 W.D. 2001 on March 22, 2001, and 12-3 W.D. 2001 on April 9, 2001. The authorized intercepts involved the cellular telephones of Michael Glanton, Peris Smith and Michael Bigstaff, Jr. The authorized intercepts covered periods of time from March 19, 2001 through April 16, 2001. The [a]pplications which Judge Johnson authorized all related, by their allegations, to the murder of Officer Naim, and, further, that [Brown] was associated with Anthony Tusweet Smith, Perris Smith (both of whom are cousins of [Brown]), Michael Glanton and Michael Bigstaff, Jr. in the trafficking of illegal drugs.

As a result of the intercepts which were memorialized on thirty-four (34) cassette tapes at Docket Number 12-1 W.D. 2001; fifty-three (53) cassette tapes at Docket Number 12-2 W.D. 2001, and twenty-two (22) cassette tapes at Docket Number 12-3 W.D. 2001 (109 total cassette tapes), the Office of the Attorney General did file additional charges against various individuals, one of whom was Angela Y. White, who also happens to be the maternal aunt of Michael Glanton. On March 30, 2001, fifteen (15) days after the murder of Officer Naim and thirteen (13) days after the arrest of [Brown], the Pennsylvania State Police pulled over and impounded a pick-up truck which was being operated by Angela White with Michael Glanton in the passenger seat, and a subsequent search of the truck revealed twelve (12) kilograms of cocaine in a hidden compartment under the bed of the truck. On November 30, 2001, Ms. White was interviewed by agents of the

Pennsylvania Bureau of Narcotics Investigation at Fort Hood, Texas, where she was stationed in the military.

During the interview, which lasted four (4) hours and twenty (20) minutes, the agents did play portions of the taped intercepts for Ms. White to listen to, and follow-up questions were asked. Some of the intercepts related to conversations between and among the aforementioned Michael Glanton, Perris Smith, Michael Bigstaff, Jr. and other individuals, including Angela White, and those intercepts also led to inquiries by the agents of Ms. White's knowledge of the murder of Officer Naim.

* * * *

Counsel was appointed for [Brown], and [the PCRA court] did grant [m]otions of [c]ourt-appointed counsel to acquire the wiretaps and logs from the Superior Court. Because the wiretaps were then over fifteen (15) years old, and because the Superior Court maintained records of that nature pursuant to internal operating procedures known only to the Superior Court, the initial attempts of [c]ourt-appointed counsel and [the PCRA court] were unsuccessful. [Brown] then retained private counsel with knowledge of the internal operating procedures of the Superior Court who, with and by [o]rder of [the PCRA court], was successful in securing release from the Superior Court of Pennsylvania archives of, first, the logs and tapes of wiretaps (34 in total) at Docket Number 12-1 W.D. 2001, and subsequently, the logs and tapes of wiretaps at Docket Numbers 12-2 W.D. 2001 and 12-3 W.D. 2001. As noted previously, Docket Number 12-2 W.D. 2001 contained 53 cassette tapes and Docket Number 12-3 W.D. 2001 contained an additional 22 cassette tapes, or 109 total cassette tapes at all three (3) Docket Numbers.

Over the course of six and one-half (6½) days, counsel for [Brown], counsel for the Commonwealth, this [c]ourt and this [c]ourt's [l]aw [c]lerks listened to all 109 cassette tapes while simultaneously reviewing all of the handwritten logs maintained simultaneously with the wiretaps of the mobile phone conversations. Those six and one-half (6½) days were conducted in camera in the [c]ourtroom with only those four (4)

representatives being present.[2]  Following review of the logs and wiretaps, the [c]ourt did convene a PCRA Hearing in [c]ourt on November 29, 2017.  At that hearing, the [c]ourt granted [Brown's] counsel's [m]otion that the testimony of Angela White be sealed, after which defense counsel called two (2) witnesses who testified in [o]pen [c]ourt.

FINDINGS OF FACT

1.    There is no recording or log of recordings at Docket Numbers 12-1,12-2 or 12-3 W.D. 2001 which contain the statement of either the caller who initiated the phone call nor the recipient who answered the phone call, wherein any person claimed responsibility for the "killing of the police officer on Linmar, Alliquippa"[.]

2.    There is no recording or log of recordings at Docket Numbers 12-1, 12-2 or 12-3 W.D. 2001, which contains the statement of either the caller nor the recipient of the call wherein any person was "the killer that was bragging about what he did".

3.    The affidavit signed by Angela White at the request of Caprice Allen, who was retained by the Innocence Project of Point Park University to secure the affidavit, states that she was "asked about this" (a wiretap) "when I was being interrogated on the Army Base in Fort Hood, Texas".

_____

[2] Out of the 109 tapes, Brown points to approximately seven instances that pertain to the instant matter.  He outlines these in pages 22 through 26 of his brief and we take our summarization from there.  In three of the conversations, Glanton, conversing with unknown individuals, expresses his unsubstantiated opinion that Brown did not kill Naim.  In one of those three calls, an unknown male claims "there is a rumor that 'Stink's' little brother may have killed Officer Naim."  Close in time to the murder of Officer Naim, Anthony Tusweet Smith shot, but did not kill, Kyle Goosby, who later became a Commonwealth witness in Brown's trial.  In three of the calls, it is unclear whether the participants are discussing the murder of Officer Naim or the shooting of Kyle Goosby.  Lastly, on April 20, 2001, a conversation took place between Peris Smith and an individual known only as "Hippie."  During that conversation, Hippie asks Peris Smith if he has information about the "heater" used in "that pig thing" with "the five-o."  Peris Smith tells Hippie to "chill."

4. An investigative report authored by Pennsylvania Office of Attorney General Narcotics Agent James J. Farmer reveals that an interview of Angela White took place at Fort Hood, Texas on November 30, 2001.

5. A redacted copy of Agent Farmer's report was provided by the Commonwealth to Erika Kreisman [Brown's trial counsel] in discovery. PCRA Hearing Transcript, Page 10, Lines 2 through 19; Page 12, Line 24, "it might have been". Also, see [Brown's] Exhibits Nos. 2 and 3 as entered into the record at the PCRA Hearing.

6. Attorney Kreisman did not review the discovery she received pre trial before coming to testify in the PCRA Hearing.

7. The parties submitted a [j]oint [m]otion to [s]upplement [r]ecord well after the PCRA Hearing. The [j]oint [m]otion will be granted, and the unredacted report of Agent Farmer will be made part of this record, and, as also requested by the parties, kept under seal.

8. The report of Agent Farmer is eight (8) pages in length, mostly single spaced, and contains only two (2) paragraphs, Nos. 31 and 32, in which the Agents focused on any knowledge that Ms. White may have had concerning the death of Officer Naim. Those two (2) paragraphs were introduced into the record by [Brown] as Page 2 of Exhibit 2.

9. A complete review of the eight-page report of Agent Farmer reveals that all lines redacted from the report relate to the charges filed against Ms. White, and no other references to the death of Officer Naim are made elsewhere in the report.

10. Per the report of Agent Farmer, as set forth on Page 2 of Exhibit 2, when asked if she knows or has heard any information about Jamie Brown, White stated she only knows of him from the newspapers and through Charlene (her sister) telling her Brown was arrested for killing a cop." She again stated, "she does not know Brown. . ."

11. At the PCRA Hearing, Angela White did testify on behalf of [Brown], and her testimony, for the most part, was consistent with the contents of the affidavit that she provided to Caprice Allen some twelve (12) years after the untimely death of Officer Naim.

PCRA Court Opinion Following Remand, 9/21/2018, at unnumbered pages 1-7.[3]

On September 21, 2018, the PCRA court denied Brown's serial PCRA petition. On October 11, 2017, the PCRA court issued an opinion denying Brown's request for discovery. The instant appeal followed.[4]

On July 16, 2019, this Court issued a memorandum affirming the PCRA court's denial of relief. On July 22, 2019, Brown filed an application for reargument. Because we agreed with one of Brown's contentions, namely that the failure to provide this Court with the sealed transcript of White's testimony from the PCRA hearing and a copy of the unredacted interview notes of Agent Farmer, was due to a breakdown at the PCRA court, we granted reargument to obtain those documents and to reexamine the issues impacted by them. As we have now received the sealed documents from the PCRA

_____

[3] We wish to commend the PCRA court for its yeoman efforts in spending 6½ days reviewing, in camera, unsealed logs and wiretaps, before conducting a hearing.

[4] The PCRA court did not order Brown to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On November 26, 2018, the Honorable Richard Mancini, President Judge of the Court of Common Pleas of Beaver County, issued a Rule 1925(a) opinion noting that the judge who had presided over Brown's case had retired and adopting its September 21, 2018 opinion.

court, we deny as moot Brown's application to supplement the original record, and proceed to examine the merits of Brown's claims.

On appeal, Brown raises seven issues. Brown's Brief, at 5-6. Five of those issues contend that the PCRA court erred in dismissing his petition as untimely because of his meritorious newly discovered evidence, Brady,[5] and governmental interference claims. Id. One issue is a challenge to the constitutionality of the PCRA's time-bar; and the remaining challenges the denial of Brown's request for discovery. Id.

"In reviewing the denial of PCRA relief, we examine whether the PCRA court's determination is supported by the record and free of legal error." Commonwealth v. Mitchell, 141 A.3d 1277, 1283–1284 (Pa. 2016) (internal punctuation and citation omitted). Further, because this was on a remand, the jurisdiction of the PCRA court was limited. Our Supreme Court has stated:

> Following a full and final decision by a PCRA court on a PCRA petition, that court no longer has jurisdiction to make any determinations related to that petition unless, following appeal, the appellate court remands the case for further proceedings in the lower court. In such circumstances, the PCRA court may only act in accordance with the dictates of the remand order. The PCRA court does not have the authority or the discretion to permit a petitioner to raise new claims outside the scope of the remand order and to treat those new claims as an amendment to an adjudicated PCRA petition.

_____

[5] Brady v. Maryland, 373 U.S. 83 (1963).

Commonwealth v. Sepulveda, 144 A.3d 1270, 1280 (Pa. 2016) (footnotes omitted); see also Commonwealth v. Rivera, 199 A.3d 365, 388-389 (Pa. 2018) (holding that following remand PCRA petitioner is not entitled to raise new claims and citing cases).

Lastly, this Court has previously explained the interplay between the newly discovered facts exception to the timeliness requirements and a substantive collateral claim of after-discovered evidence as follows:

> The timeliness exception set forth in Section 9545(b)(1)(ii) requires a petitioner to demonstrate he did not know the facts upon which he based his petition and could not have learned those facts earlier by the exercise of due diligence. Due diligence demands that the petitioner take reasonable steps to protect his own interests. A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence. This rule is strictly enforced. Additionally, the focus of this exception is on the newly discovered facts, not on a newly discovered or newly willing source for previously known facts.
>
> The timeliness exception set forth at Section 9545(b)(1)(ii) has often mistakenly been referred to as the "after-discovered evidence" exception. This shorthand reference was a misnomer, since the plain language of subsection (b)(1)(ii) does not require the petitioner to allege and prove a claim of "after-discovered evidence." Rather, as an initial jurisdictional threshold, Section 9545(b)(1)(ii) requires a petitioner to allege and prove that there were facts unknown to him and that he exercised due diligence in discovering those facts. Once jurisdiction is established, a PCRA petitioner can present a substantive after-discovered-evidence claim. See 42 Pa.C.S.A. § 9543(a)(2)(vi) (explaining that to be eligible for relief under PCRA, petitioner must plead and prove by preponderance of evidence that conviction or sentence resulted from, inter alia, unavailability at time of trial of exculpatory evidence that has subsequently become available and would have changed outcome of trial if it had been introduced). In other words, the "new facts" exception at:

> [S]ubsection (b)(1)(ii) has two components, which must be alleged and proved. Namely, the petitioner must establish that: 1) the facts upon which the claim was predicated were unknown and 2) could not have been ascertained by the exercise of due diligence. If the petitioner alleges and proves these two components, then the PCRA court has jurisdiction over the claim under this subsection.
>
> Thus, the "new facts" exception at Section 9545(b)(1)(ii) does not require any merits analysis of an underlying after-discovered-evidence claim.

Commonwealth v. Brown, 111 A.3d 171, 176–177 (Pa. Super. 2015) (some citations and quotation marks omitted, emphases in original), appeal denied, 125 A.3d 1197 (Pa. 2015).

With this framework in mind, we now turn to the issues raised by Brown. We initially note, the prior panel of this Court held that Brown's petition was "patently untimely" and that the White affidavit in and of itself was not a newly discovered fact. Brown, supra at 500, 502. Moreover, we remanded this matter in order to ascertain if Brown acted with due diligence in obtaining the White affidavit,[6] if there was information on the wiretaps that was admissible, and, if so, whether it constituted a newly discovered fact and/or Brady material.

Brown's first issue is less a separate issue than a compilation of the issues that follow it, as he generally states that his petition was timely under

---

[6] The PCRA court held that Brown acted with due diligence. PCRA Ct. Op. at 7.

either the newly discovered facts and/or the governmental interference exception. See Brown's Brief, at 45-52. Therefore, we will address it at the conclusion of this memorandum. However, to the extent that Brown raises a claim of governmental interference in his first issue, we find that it was not properly before the PCRA court as Brown raised it for the first time in his post-remand amended PCRA petition filed without leave of court on April 28, 2017. See Amended Petition for Post-Conviction Relief, 4/28/2017, at 21. As discussed above, our Supreme Court has specifically held that a PCRA petitioner cannot raise new claims on remand. Rivera, supra at 388-389. Thus, to the extent Brown raises this claim, it fails.

In his second and third claims, Brown contends the PCRA court erred in holding that the information and testimony of Angela White were neither facts nor newly discovered. Brown's Brief, at 42-59.

Brown first contends that the PCRA court erred in holding counsel could have discovered White's information prior to trial, and, therefore, it was not newly discovered. Brown's Brief, at 53-59.

At the November 2017 PCRA hearing, trial counsel testified she knew of the existence of White and that White had information about the matter; counsel wrote to her but did not receive a response and made no further attempts to contact White. N.T. PCRA Hearing, 11/27/2017, Vol. II. at 10, 14. Brown does not dispute this, but claims counsel was unaware of the details of White's information, did not have the unredacted interview notes,

and did not know White had listened to wiretaps. Brown's Brief, at 53-54. Brown argues, "the PCRA court confused knowledge of the existence of [] White with knowledge of her testimony and the wiretap evidence. The critical issue is not the availability or existence of the witness, but their testimony." Id. at 55.

In support of this argument, Brown cites to three cases, Commonwealth v. Cooney, 282 A.2d 29 (Pa. 1971); Commonwealth v. Bulted, 279 A.2d 158 (Pa. 1971); and Commonwealth v. Bonacurso, 625 A.2d 1197 (Pa. Super. 1993). However, none of these cases support counsel's attempt to distinguish between knowledge of the existence of a witness and knowledge of the contents of her information.

Initially, we note that none of these cases concern untimely PCRAs. Rather, all concern claims of after-discovered evidence pursuant to 42 Pa.C.S.A. § 9543(a)(2)(vi). Our Supreme Court has stated "the newly-discovered facts exception to the time limitations of the PCRA, as set forth in subsection 9545(b)(1)(ii), is distinct from the after-discovered evidence basis for relief delineated in 42 Pa.C.S. § 9543(a)(2)." Commonwealth v. Burton, 158 A.3d 618, 629 (Pa. 2017). Further, each of the three cases specifically noted a petitioner must show that the evidence was unavailable at the time of trial in order qualify as after-discovered evidence. See Cooney, supra at 30; Bulted, supra at 160; Bonaccurso, supra at 1199. Lastly, in each of these cases, the fact that the evidence or witness was unavailable at the time

- 13 -

of trial was not an issue, thus, there was no analysis of the unavailability prong; rather, in each case the decision focused on the issue of whether the previously unavailable evidence was exculpatory. See Cooney, supra at 30 (holding bullet found in defendant's head which corroborated his theory of case was not found until after trial); Bulted, supra at 160 (parties agreed witness was unavailable for trial where he had fled jurisdiction and efforts to locate him were unsuccessful); Bonaccurso, supra at 1199-1200 (holding witness unavailable for trial where he initially lied to police and said he did not witness crime). Thus, these cases are irrelevant to the instant matter, because they do not discuss the issue of unavailability or support Brown's contention that the trial court should have distinguished between knowledge of the existence of a possible witness and knowledge of the contents of her testimony.

Here, the record amply supports the PCRA court's finding that trial counsel was aware White existed and had information concerning this case. The record also shows trial counsel made the bare minimum of effort to contact White by sending her a letter. When White did not respond to the letter (which she may or may not have received), counsel did not make any further attempt to contact her. Had she done so, she could have discovered the information currently at issue. Thus, his second claim does not merit relief.

In his third claim, Brown maintains the PCRA court erred in holding neither the White affidavit nor her testimony at the PCRA hearing were facts. Brown's Brief, at 57-59.

To the extent Brown is claiming that the White affidavit in and of itself constituted a newly discovered fact, the issue was not before the PCRA court on remand. This Court has already ruled that it did not.

In our prior decision in this matter, we stated:

> Our Supreme Court addressed a situation like the one in the case sub judice in Commonwealth v. Castro, 625 Pa. 582, 93 A.3d 818 (2014). In Castro, the petitioner relied upon a newspaper article to establish the newly-discovered fact exception to the PCRA's timeliness requirement. Our Supreme Court held that a newspaper "article contain[ed] allegations that suggest such evidence may exist, but allegations in the media, whether true or false, are no more evidence than allegations in any other out-of-court situation." Id. at 825.
>
> In this case, White's affidavit does not set forth who made the statements on the wiretaps. . . The affidavit states that the wiretaps had the voice of a killer; however, it fails to aver that the voice heard on the wiretap was not [Brown's] voice. Instead, the affidavit merely references exculpatory wiretaps that may exist. This is similar to Castro in which the newspaper article referenced a possible video tape that could be evidence. See id. at 827. Thus, there is no fact within the affidavit, only information which could lead [Brown] to discover facts.

Brown, supra at 502-503.

This decision is binding on both the PCRA court and this Court under the law of the case doctrine. This doctrine "refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same

- 15 -

court or by a higher court in the earlier phases of the matter." Commonwealth v Starr, 664 A.2d 1326, 1331 (Pa. 1995).

> Among the related but distinct rules which make up the law of the case doctrine are that: (1) upon remand for further proceedings, a trial court may not alter the resolution of a legal question previously decided by the appellate court in the matter; (2) upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court.
> . . .

Id. Thus, neither the PCRA court nor this Court can alter the prior panel's decision that the White affidavit is not a fact.

Moreover, we agree with the PCRA court that White's testimony did not constitute a fact. In its opinion after remand, the PCRA court stated White's testimony "for the most part, was consistent with the contents of the affidavit[.]" PCRA Ct. Op., at unnumbered page 7. The parties do not dispute the wiretaps did not corroborate the allegations made in the affidavit. Id. at 8.

We have reviewed White's sealed testimony; we find nothing in her testimony that contradicts the PCRA court's findings that White did not know who was speaking on the wiretap or what incident the speakers were discussing. PCRA Ct. Op., at unnumbered pages 8-9. Moreover, our reading of the sealed record entirely supports the PCRA court's conclusion that there was little difference between White's original affidavit and her PCRA hearing testimony. See id. at 7.

We see no meaningful distinction between our prior panel's analysis, as quoted above, of the White affidavit and our current analysis of her testimony at the PCRA hearing. White does not recognize either voice in the wiretap and is unware if the call referred to the killing of Officer Naim. Moreover, her testimony did not lead to any facts, as the parties were unable to discover any wiretap that corroborated her allegations. Thus, Brown's third claim does not merit relief. See id.; see also Castro, supra at 825.

In his fourth claim, Brown contends the PCRA's time bar is unconstitutional as applied to him. Brown's Brief, at 59-65. However, as Brown also raised this claim for the first time in his post-remand April 28, 2017 amended PCRA petition, and as it is well beyond the scope of our remand order, the PCRA court had no jurisdiction to consider it. See Sepulveda, supra at 1280. Thus, the claim fails.[7]

_____

[7] In any event, the claim is meritless. Our Supreme Court has stated:

> This Court has held that the PCRA's time restriction is constitutionally valid. See Commonwealth v. Peterkin, 554 Pa. 547, 722 A.2d 638, 643 (1998) ("the PCRA's time limitation upon the filing of PCRA petitions does not unreasonably or unconstitutionally limit [an appellant's] constitutional right to habeas corpus relief."). Furthermore, we have held that the PCRA time limits are jurisdictional in nature, implicating a court's very power to adjudicate a controversy. See Commonwealth v. Fahy, 558 Pa. 313, 737 A.2d 214 (1999). Accordingly, the "period for filing a PCRA petition is not subject to the doctrine of equitable tolling;" instead, the time for filing a PCRA petition can be extended only to the extent that the PCRA permits it to be

In his fifth issue, Brown maintains the PCRA court erred in not granting him a new trial because the Commonwealth failed to turn over to him an unredacted[8] copy of Angela White's 2001 interview with Agent Farmer. He contends it also failed to turn over evidence in the form of certain tape-recorded statements made in the wiretaps. Lastly, Brown contends White's testimony at the PCRA hearing and the information on the wiretaps constitutes after-discovered evidence. Brown's Brief, at 42-52, 65-76. For the reasons discussed below, this claim is meritless.

Brown contends the Commonwealth committed a Brady violation when it failed to turn over to him the unredacted notes from White's interview with

_____

extended, i.e., by operation of one of the statutorily enumerated exceptions to the PCRA time-bar. Id. at 222.

More recently, in Commonwealth v. Robinson, 575 Pa. 500, 837 A.2d 1157 (2003), we recounted this Court's rejection of "various theories devised to avoid the effects of the one-year time limitation" of the PCRA. Id. at 1157 (collecting cases). In Robinson, we reiterated the strictly jurisdictional nature of the PCRA time-bar and that "the PCRA confers no authority upon this Court to fashion ad hoc equitable exceptions to the PCRA time-bar in addition to those exceptions expressly delineated in the Act." Id. at 1161 (quoting Commonwealth v. Eller, 569 Pa. 622, 807 A.2d 838, 845 (2002)).

Commonwealth v. Cruz, 852 A.2d 287, 292 (Pa. 2004).

[8] The Commonwealth did turn over a redacted copy of the interview to Brown's counsel prior to trial. PCRA Ct. Op., at unnumbered page 6; N.T. PCRA Hearing, 11/29/2016, Vol. II at 10, 12. The PCRA court held the portion turned over to trial counsel contained the only references in the interview to the shooting of Officer Naim. PCRA Ct. Op., at unnumbered page 6.

Agent Farmer and the information on the wiretaps pertaining to the instant matter.

Our Supreme Court has stated in order to prove a Brady violation, a defendant must show:   (1) the prosecution concealed evidence; (2) the evidence was either exculpatory or impeachment evidence favorable to him; and (3) he was prejudiced by the concealment.  Commonwealth v. Bomar, 104 A.3d 1179, 1189 (Pa. 2014), cert. denied, 136 S.Ct. 49 (2015).  Further,

> Pursuant to Brady and its progeny, the prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police.  However, there is no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case.  The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense.
>
> Instead, favorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome. In evaluating whether a reasonable probability of a different outcome has been demonstrated, [t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A defendant thus need not demonstrate that after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict.  Rather, a defendant need only show that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.

Commonwealth v. Natividad, 200 A.3d 11, 26 (Pa. 2019) (quotation marks and citations omitted). Lastly, our Supreme Court has stated, "admissibility at trial is not a prerequisite to a determination of materiality under Brady. Rather, the touchstone of materiality is whether there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Commonwealth v. Willis, 46 A.3d 648, 670 (Pa. 2012) (citation omitted).

With respect to the White notes or interview, as noted above, the PCRA court, after its in camera review of the unredacted interview, found the Commonwealth had turned over the only portions of the notes or interview that directly referenced the killing of Officer Naim, namely paragraphs 31 and 32, to Brown prior to trial. PCRA Ct. Op., at unnumbered page 6. It further found the remaining, redacted materials related solely to the charges against White, in an unrelated drug investigation. Id. We have now thoroughly reviewed the notes in question, and we agree with the PCRA court. Brown does not point to and we can find nothing in the remaining interview notes that are in any way relevant to Brown, let alone Brady material. See Bomar, supra at 1189. Thus, this claim does not merit relief.

With respect to the issue of the wiretaps, we initially wish to note the following. As per Operating Procedures Sections 65.75 and 65.77 of the Superior Court, the PCRA court returned the wiretaps and their logs to this Court's archives, so they are not contained in the certified record. Brown

could previously have moved pursuant to 18 Pa.C.S.A. § 5715 to unseal them and have them forwarded to this panel. However, he did not do so. Thus, under settled case law, we found, in our original decision, Brown waived the claim. See Commonwealth v. B.D.G., 959 A.2d 362, 372 (Pa. Super. 2008) (en banc); see also Commonwealth v. Martz, 926 A.2d 514, 524-525 (Pa. Super. 2007), appeal denied, 940 A.2d 363 (Pa. 2008).

Following our grant of reconsideration, Brown moved to unseal the wiretaps. We do not approve of this belated attempt. Further, while Brown attempts to specify where we may find the approximately seven extracts of conversation, he is generally unable to narrow it to a particular tape and, in some instances, it is not clear whether he is referencing a tape or a portion of the log of the tapes. It would place an undue burden on this Court to unseal and review the tapes under these circumstances. However, Brown and the Commonwealth are in general agreement as to the content of the wiretaps. Given this, in the interest of justice, we will accept Brown's version of the seven instances and review the claim on the merits without the necessity of unsealing the wiretaps.

To the extent that Brown is claiming that the Commonwealth violated Brady by not turning over all of the wiretaps, the claim lacks merit, as it is evident, as enunciated above, that the overwhelming majority of the wiretaps concerned an entirely separate drug investigation that had nothing to do with the murder of Officer Naim. With respect to those approximately seven

instances where the wiretaps arguably, do discuss the murder, we see nothing in them that constitutes Brady material.[9]

As noted above, in three of the seven instances it is not even clear that the callers are discussing the murder of Officer Naim rather than the shooting of Kyle Goosby, and Brown's attempts to convince us otherwise are mere speculation. Moreover, none of the three statements at issue contain any information favorable to Brown. The wiretaps do not show any of the callers, many of whom were unidentified, were witnesses to the crime or had any direct knowledge of it. No one confesses to the murder, provides the name of a suspect, or any basis for his or her belief that Brown was not the murderer. Further, no one in the wiretaps, despite Brown's specious arguments to the contrary, states that they know anything about the murder weapon.

While Glanton states in several of the calls that he thought someone else was the shooter, the Commonwealth had already disclosed that information prior to trial via the redacted interview notes from Agent Farmer's interview with Angela White. Brown utterly fails to explain why having multiple sources for the same information, that Glanton believed he was not

_____

[9] Again, we note that, as the PCRA court reviewed the wiretaps in camera, for purposes of our merit review, we accept the summarizations of the portions of the conversations as contained in Brown's brief.

the murderer, would have altered his defense strategy or have undermined confidence in the verdict.

In sum, Brown has offered no legal support of his claims that the seven taped calls constitute Brady material. Further, he has not pointed to any evidence, admissible or otherwise contained in the calls. Moreover, he neglects to provide a specific, concrete explanation of how the information contained therein was favorable to him, would have changed his defense strategy, or would have undermined confidence in the verdict. Thus, Brown has not shown that the wiretaps were material to his defense and his claim that the wiretaps constituted Brady material does not merit relief. See Natividad, supra at 26.

Brown contends that White's testimony and the wiretaps constitute after-discovered evidence.

> To prevail on an after-discovered evidence claim for relief under subsection 9543(a)(2)(vi), a petitioner must prove that (1) the exculpatory evidence has been discovered after trial and could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict.

Burton, supra at 629 (citation omitted).

Leaving aside the issue, discussed more fully above, of whether Brown could have obtained this evidence prior to trial, Brown has failed to demonstrate that it would have compelled a different verdict. White's statement that she listened to a wiretap in which an unknown person

confessed to the murder of an unknown police officer is hearsay, not within any exception, and so unreliable as to be inadmissible. See PCRA Ct. Op., at unnumbered page 7 (finding White's testimony not credible). "A claim which rests exclusively on inadmissible hearsay is not of a type that would implicate the after-discovered evidence exception to the timeliness requirement, nor would such a claim, even if timely, entitle Appellant to relief under the PCRA." Commonwealth v. Yarris, 731 A.2d 581, 592 (Pa. 1999). Thus, this claim does not merit relief.

Brown's claim that the statements contained on the wiretaps constitiute after-discovered evidence is equally lacking in merit. As discussed above, the information that Glanton did not believe that Brown killed Officer Naim was known to counsel prior to trial because of the redacted White interview or notes. The statement that "Stink's" little brother might have been the killer is inadmissible double (or possibly triple) hearsay as it is a statement that an unknown person told Glanton that other unknown people were claimng someone else "might" be the killer. In other calls, the information is neither evidence nor exculpatory as the identity of the speaker is not known and/or it is unclear from the context whether the callers are discussing Officer Naim's murder or the shooting of Kyle Goosby. Lastly, this Court is unable to discern the basis for Brown's belief that the call between "Hippie" and Peris Smith is exculpatory, relevant, or admissible. We see nothing in the single word, "chill," which shows that Peris Smith knew anything about the murder weapon

or how this statement was exculpatory. Moreover, the conversation is inadmissible hearsay and Brown has failed to show that it is subject to any exception. Brown's claim that the wiretaps constitute after-discovered evidence does not merit relief. See Yarris, supra at 592.

In his sixth claim, Brown argues that the PCRA court erred in not considering newly discovered facts in the form of affidavits from his co-defendant Acey Taylor and former Commonwealth witness Darnell Hines. Brown's Brief at 42-52, 76-86.

Brown raised these claims for the first time in his post-remand April 28, 2017 amended PCRA petition. Amended Petition for Post-Conviction Relief, at 10-12. As stated above, following a limited remand, an appellant cannot raise new claims exceeding the scope of the remand. See Sepulveda, supra at 1280; see also Rivera, supra at 388-389. Here, as discussed above, the remand was limited to the White affidavit and the wiretaps. Taylor and Hines' recantation affidavits are completely unrelated to White or to the wiretaps. Moreover, we find Brown's attempts to both limit the scope of the holding in Sepulveda and to distinguish it utterly unpersuasive. The PCRA court was without jurisdiction to consider Brown's new and unrelated claims of newly discovered evidence. Thus, his sixth claim fails.

In his seventh and final issue, Brown avers that the trial court erred in denying his request for discovery. Brown's Brief, at 86-89. In his request, Brown sought:

. . . any investigative files maintained by the Aliquippa Police Department, Beaver County detectives, the Office of Attorney General, the Pennsylvania State Police, and any information provided by the F.B.I. to the aforementioned state or local law enforcement as it relates to an investigation of Anthony Tusweet Smith, Michael "Mike-Mike" Glanton, and Peris Smith and their involvement in the murder of Officer Naim, including but not limited to any statements provided by Anthony "Ali" Dorsett.

In addition, counsel requests copies of any police files maintained by the Aliquippa Police Department, Office of Attorney General, Pennsylvania State Police, Beaver County detectives, and any information provided by the F.B.I. to the aforementioned state or local law enforcement pertaining to a parallel drug investigation of the Smith brothers and Michael Glanton.

Counsel also seeks discovery of any investigative files maintained by the Aliquippa Police Department, Beaver County detectives, the Office of Attorney General, the Pennsylvania State Police, and any information provided by the F.B.I. to the aforementioned state or local law enforcement as it relates to an investigation into possible Aliquippa police corruption at the time of Officer Naim's death, not limited to grand jury information.

Request for Discovery Pursuant to Pa.R.Crim.P. 902(E), 9/25/2017, at 4-5 (paragraph enumeration omitted).

The Pennsylvania Rules of Criminal Procedure proscribe discovery during collateral proceedings "except upon leave of court after a showing of exceptional circumstances." Pa.R.Crim.P. 902(E)(1). "We review the denial of a discovery request in post-conviction proceedings for abuse of discretion." Commonwealth v. Hanible, 30 A.3d 426, 452 (Pa. 2011), cert. denied, 568 U.S. 1091 (2013). "An abuse of discretion is not a mere error in judgment. Instead, it is a decision based on bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law. Moreover, we recall that the

appellant has the duty to convince us an abuse occurred." Commonwealth v. Frey, 41 A.3d 605, 611 (Pa. Super. 2012), appeal denied, 65 A.3d 413 (Pa. 2013).

Here, Brown has not persuaded us that the PCRA court abused its discretion. In its decision denying Brown's request, the PCRA court detailed the extent of the information already provided to Brown prior to trial about the possible involvement of Anthony Tusweet Smith in the murder of Officer Naim, and that Angela White, Michael Glanton and others in their circle might have information about the incident. PCRA Court Opinion, 10/11/2017, at unnumbered pages 2-3. It then found that Brown failed to identify "specific documents or items that were not disclosed pre-trial or during the trial." Id. at 4. It concluded that Brown's exceedingly broad request was "speculative and a baseless fishing expedition." Id. Having reviewed the record, which supports its findings, we discern no abuse of discretion. See Frey, supra at 611. Brown's final claim fails.

Because Brown's second through seventh claims do not merit relief, we find that the PCRA court did not err in holding that Brown did not timely file his PCRA petition under any exception to the PCRA's timeliness requirements. Thus, his first claim does not merit relief.

Accordingly, for the reasons discussed above, we affirm the denial of Brown's third PCRA petition.

Order affirmed. Motion to unseal wiretap records denied. Motion to supplement the record denied.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/2/2019